1

2

3

4

5

6

7

8

9                        IN THE UNITED STATES DISTRICT COURT

10                      FOR THE EASTERN DISTRICT OF CALIFORNIA

11   THOMAS LEE WALKER,

12            Petitioner,                    No. CIV 04-0555 LKK JFM P

13        vs.

14   TOM CAREY, Warden,

15            Respondent.                    FINDINGS AND RECOMMENDATIONS

16   _____/

17            Petitioner is a state prisoner proceeding in propria persona with an application for

18   a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2001 conviction

19   on charges of sale of marijuana, sale of cocaine base, possession for sale, and the sentence of

20   sixteen years, four months, in prison imposed thereon.[1]  In his petition filed March 19, 2004

21   petitioner raises 16 claims that his prison sentence violates the United States Constitution.

22   /////

23   /////

24   _____

25        [1]  Petitioner's sentence was enhanced by findings that (1) petitioner was released from
     custody on bail at the time the crimes charged in counts I and II occurred; and (2) petitioner
26   suffered two prior convictions pursuant to Health and Safety Code §§ 11370.2 subdivision (a)
     and 11370, subdivisions (a) and (c).

1

FACTS[2]

All the offenses occurred in the area in front of 201 Mark Street in Vallejo. This area and the immediately surrounding streets are associated with a high level of drug sales. The north substation of the Vallejo Police Department is located 75 yards from 201 Mark Street.

A. Count I: Sale of Marijuana

On May 2, 2000, [petitioner] sold a baggie containing .49 grams of marijuana to Reka Turner. The sale took place on the street in front of 201 Mark Street.

B. Count II: Sale of Cocaine Base

On May 29, 2000, Officer Michael Wheat of the Vallejo Police Department was observing the 100 and 200 blocks of Mark Street with the aid of his binoculars . A driver in a white Mustang pulled up in front of [petitioner]. The driver looked at [petitioner], made some hand gestures, then parked three houses down the block. The driver exited his car and approached [petitioner]. [Petitioner] spoke briefly with two individuals, then turned and faced the driver. The driver handed [petitioner] what appeared to be folded money. [Petitioner] took the folded piece of paper, reached into his mouth, abstracted a small object and handed it to the driver.

Testifying as an expert in hand-to-hand drug transactions, Officer Wheat stated that it was common for drug dealers to hide rock cocaine in their mouths. With the belief that the driver purchased a rock of cocaine from [petitioner], Officer Wheat and his partner made a quick vehicle stop within three or four blocks. Officer Wheat informed the driver of the Mustang that he had observed the drug transaction. The driver put his head down and pointed in between the seats, where Wheat found a piece of rock cocaine.

Arrested the next day, [petitioner] had $376 in cash and a pager. He denied selling cocaine and instead said he was involved in selling "weed." [Petitioner] identified his address as 201 Mark Street.

/////

---

[2] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Walker</u>, No. A094495 (June 7, 2002), a copy of which is attached as Exhibit E to Respondent's Answer, filed October 6, 2004.

C.  Count III:  Possession for Sale of Cocaine Base

In response to repeated reports of drug activity, on March 6, 1999, Officer Drew Ramsey and two other officers drove up and parked in front of 201 Mark Street.  Two of three men standing in the driveway ran off.  Officer Ramsay chased a suspect running along the side of the house.  The suspect yelled out "Rollers" as he ran.  "Rollers" is "street slang" for police.

During the chase, Officer Ramsay noticed [petitioner] crouching near the crawl space of the house, making shaking movements as if he were dumping things onto the ground.  Officer Ramsay told Officer Horton, who was following him, to "watch" [petitioner].  No one else was in the yard.

Returning to the crawl space area, Officer Ramsay found a slightly torn baggie and 17 pieces of rock cocaine scattered about.  He testified that [petitioner] did not appear to be under the influence of any drugs and did not possess any narcotics paraphernalia.  The seized rocks contained 4.28 grams of cocaine base.

Officer Les Bottomley testified as an expert in possession of cocaine base for sale and street level hand-to-hand sales of narcotics.  He believed [petitioner] possessed the rock cocaine for sale rather than for personal use.  This belief was based on the "sheer number" of rocks that [petitioner] possessed, in a neighborhood with "probably the highest" incidence of drug sales in the city, coupled with the fact that [petitioner] had no paraphernalia and did not appear to be under the influence of narcotics.

(People v. Walker, slip op. at 2-3)

PROCEDURAL HISTORY

1.  On June 7, 2002, petitioner's direct appeal was denied by the California Court of Appeal for the First Appellate District.  (Resp.'s Ex. E.)  Petitioner appealed on two grounds: denial of his motion to suppress evidence obtained from a warrantless search of his grandmother's backyard and prejudicial prosecutorial misconduct.  (Id. at 1.)

2.  On July 19, 2002, petitioner filed a petition for review in the California Supreme Court.  (Resp.'s Ex. F.)  Petitioner continued to challenge the warrantless search, but also alleged certain evidence should have been suppressed and raised other Fourth Amendment claims.  (Id.)  Petitioner also argued that the admission of hearsay testimony violated his right to

1   due process and to confront witnesses against him.  (Id.)  On August 21, 2002, the California

2   Supreme Court denied the petition for review without comment.  (Resp.'s Ex. G.)

3           3.  On October 22, 2002, petitioner filed a petition for writ of habeas corpus in the

4   Solano County Superior Court.  (Resp.'s Ex. H.)  Petitioner raised 15 claims.  On November 27,

5   2002, the Solano County Superior Court denied petitioner's claims.  (Resp.'s Ex. I.)  Appended

6   to the order of denial is a document entitled "Comment" in which the Superior Court advised

7   petitioner that claims that could have been raised on direct appeal but were not are not cognizable

8   on habeas corpus review, citing In re Dixon (1953) 41 Cal.2d 756, 759.  (Id. at 2.)  The Superior

9   Court found that petitioner's claims regarding sentencing, search and seizure and evidentiary

10  claims did not fall under any of the exceptions noted in In re Harris (1993) 5 Cal.4th 813, 828, so

11  those claims were not cognizable on habeas review.  (Resp.'s Ex. I, at 2, 3.)  The Superior Court

12  found that petitioner's double jeopardy claim was required to be raised in his direct appeal, but

13  was not, so it was also barred from consideration, citing People v. Blalock (1960) 53 Cal.2d 798,

14  801.  (Resp.'s Ex. I, at 2.)  Finally, the Superior Court found that petitioner had failed to make a

15  prima facie showing that "his counsel's performance was constitutionally deficient and that such

16  deficiency led to an unfair trial or unreliable result (*Strickland v. Washington* (1984) 466 U.S.

17  668, 694)."  (Resp.'s Ex. I, at 3.)

18          4.  On March 19, 2004, petitioner filed the instant petition, raising 16 claims, but

19  also appended a copy of his 2002 petition for writ of habeas corpus filed in the California

20  Supreme Court.

ANALYSIS

21  I.  Standards for a Writ of Habeas Corpus

23          Federal habeas corpus relief is not available for any claim decided on the merits in

24  state court proceedings unless the state court's adjudication of the claim:

25          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
26          determined by the Supreme Court of the United States; or

4

1        (2) resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the
2        State court proceeding.

3 28 U.S.C. § 2254(d).

4        Under section 2254(d)(1), a state court decision is "contrary to" clearly

5 established United States Supreme Court precedents if it applies a rule that contradicts the

6 governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

7 indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

8 result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

9 (2000)).

10        Under the  "unreasonable application" clause of section 2254(d)(1), a federal

11 habeas court may grant the writ if the state court identifies the correct governing legal principle

12 from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

13 prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

14 simply because that court concludes in its independent judgment that the relevant state-court

15 decision applied clearly established federal law erroneously or incorrectly.  Rather, that

16 application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

17 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

18 review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

19        The court looks to the last reasoned state court decision as the basis for the state

20 court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

21 II.  Petitioner's Claims

22     A.  Sentencing Claims

23        Petitioner raises various claims concerning sentencing errors.  (Pet., Grounds One,

24 Two and Four.)  Petitioner argues he was denied due process and equal protection when the trial

25 court sentenced petitioner to consecutive terms; that there are pre-emptive laws in sentencing that

26 /////

1   the state court may not derogate; and that jurors were not allowed to consider facts in mitigation

2   concerning the prior convictions.

3          Habeas corpus relief is unavailable for alleged errors in the interpretation or

4   application of state sentencing laws by either a state trial court or a state appellate court.

5   Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).  So long as a state sentence "is not based

6   on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

7   motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of

8   state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  The Ninth

9   Circuit has specifically refused to consider state law errors in the application of state sentencing

10  law.  See, e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989).  In Miller, the court refused to

11  examine the state court's determination that a defendant's prior conviction was for a "serious

12  felony" within the meaning of the state statutes governing sentence enhancements.  Id. at 1118-

13  19.  The court did not reach the merits of the Miller petitioner's claim, stating that federal habeas

14  relief is not available for alleged errors in interpreting and applying state law.  Id. (quoting

15  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985)).

16         In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court reiterated the

17  standard of review for a federal habeas court.  It held that "it is not the province of a federal

18  habeas court to reexamine state court determinations on state law questions."  Id. at 65.  The

19  court emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. (citing

20  Lewis v. Jeffers, 497 U.S. 764 (1990) and Pulley v. Harris, 465 U.S. 37, 41 (1984)).  The court

21  further noted that the standard of review for a federal habeas court "is limited to deciding

22  whether a conviction violated the Constitution, laws, or treaties of the United States (citations

23  omitted)."  Estelle, 502 U.S. at 67.

24         Therefore, petitioner's claims of sentencing error do not state a federal claim.  See

25  also Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994)("The decision whether to

26  impose sentences concurrently or consecutively is a matter of state criminal procedure and is not

1   within the purview of federal habeas corpus.")  A habeas petitioner may not transform a state law

2   issue into a federal one merely by asserting a due process violation.  See Langford v. Day, 110

3   F.3d 1380, 1389 (9th Cir.1996).

4         Finally, after a careful review of the record of the sentencing proceedings, this

5   court finds no federal constitutional error in connection with petitioner's sentence.  Accordingly,

6   claims 1, 2 and 4 should be denied.

7       B.  Sentence Enhancement

8         Petitioner contends that the use of priors to enhance the instant sentence violated

9   his prior plea agreements, the use of his prior drug convictions to enhance his sentence

10  constituted double jeopardy and violated due process, and that the failure of the trial court to

11  strike his prior convictions was an abuse of discretion.  (Pet., Claims Three and Five.)

12        Petitioner waived jury trial[3] and admitted two prior convictions for possession of

13  cocaine base for sale, Cal. Health & Safety Code § 11351.5, and transportation of a controlled

14  substance, Cal. Health & Safety Code § 11352, within the meaning of Cal. Health & Safety Code

15  § 11370.2(a) and 11370(a) and (c).  (Resp.'s Ex. L1 at 289-92.)  Those provisions of the

16  California Health and Safety Code prohibit probation and require a consecutive three year

17  enhancement for each prior felony conviction.  (Id.)  The trial court denied probation and

18  imposed the enhancement for the prior convictions.  (RT 300-01.)

19        Respondent contends that the enhancement does not result in an additional penalty

20  for the earlier crimes, but rather an aggravated sentence based on petitioner's recidivism.

21  Respondent argues that petitioner may not challenge the validity of the prior convictions in

22  federal court.  Lackawanna County District Attorney v. Coss, 533 U.S. 394 (2001).

23        The state court did not reach the merits of this claim.

24

25     [3]  A criminal defendant in California has a statutory right to have a jury determine the
26  question whether he has suffered convictions for prior felony offenses.  Dillard v. Roe, 244 F.3d
    758, 769 & n.13 (9th Cir.2001) (citing California Penal Code § 1025(b)).

1    To the extent petitioner is arguing that his prior convictions are invalid because he

2    was not informed they could be used in subsequent criminal proceedings to enhance his sentence,

3    his claim is barred by Lackawanna v. Coss, 532 U.S. 394 (2001).  In Lackawanna the Supreme

4    Court held that where, as here, a petitioner's state court conviction was later used to enhance a

5    criminal sentence, "the defendant generally may not challenge the enhanced sentence through a

6    petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained."

7    532 U.S. at 403-04.  The Supreme Court has allowed a petitioner to collaterally challenge a prior

8    conviction only "where there was a failure to appoint counsel in violation of the Sixth

9    Amendment." Id. at 404.  Because there is no evidence that petitioner was proceeding without

10   counsel in connection with his prior guilty pleas, the "failure to appoint counsel" exception does

11   not apply and he is precluded from collaterally attacking those convictions through a § 2254

12   petition. See id. at 406.

13   In any event, petitioner has failed to establish that his prior guilty pleas were

14   invalid.  "Before a court may accept a defendant's guilty plea, the defendant must be advised of

15   the 'range of allowable punishment' that will result from his plea." Torrey v. Estelle, 842 F.2d

16   234, 235 (9th Cir. 1988).  However, state courts are not required to advise criminal defendants of

17   all collateral consequences of a plea or of all possible ancillary or consequential results which

18   may flow from a plea of guilty.  Id. at 235; see also United States v. Littlejohn, 224 F.3d 960, 965

19   (9th Cir. 2000).  Thus, a defendant's ignorance of collateral consequences does not deprive a

20   guilty plea of its voluntary character.  United States v. Brownlie, 915 F.2d 527, 528 (1990);

21   Torrey, 842 F.2d at 235.  The possibility of future sentence enhancement is a collateral, not a

22   direct, consequence of a guilty plea.  Brownlie, 915 F.2d at 528; United States v. Garrett, 680

23   F.2d 64, 66 (9th Cir. 1982).  Accordingly, petitioner's guilty pleas were not rendered involuntary

24   by his ignorance of the possibility of future sentence enhancement.  See Wheeler v. Yarbrough,

25   352 F. Supp.2d 1085, 1094-95 (C.D. Cal. 2005).  In short, petitioner's prior guilty pleas were not

26   involuntary or unintelligent based on the fact that he was not advised that the law might change

8

1  and that his conviction might result in a longer sentence enhancement than that in force when he

2  pled guilty.

3        Petitioner also argues that his current sentence breached the plea agreements

4  entered with respect to his prior convictions because he did not agree, in entering the agreements,

5  that the conviction later could be used to enhance his sentence.  Assuming arguendo that this

6  claim is not barred by Lackawanna, it should be denied.  A guilty plea is invalid if induced by a

7  promise which renders the plea involuntary.  Machibroda v. United States, 368 U.S. 487, 493

8  (1962); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).  When a plea agreement rests in any

9  significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

10  of the inducement or consideration, such promise must be fulfilled.  Santobello, 404 U.S. 257,

11  262 (1971); Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985).  Due process concerns of

12  fundamental fairness require that a prosecutor keep the promises upon which a defendant relies

13  in entering into a plea agreement.  Claims of a breached plea agreement are analyzed according

14  to contract law standards of interpretation, such that a court looks to what was reasonably

15  understood by the parties to be the terms of the agreement and whether or not those terms were

16  fulfilled.  See United States v. Kamer, 781 F.2d 1380, 1387 (9th Cir. 1986).

17        Petitioner's claim fails because he does not allege that the prosecutor failed to

18  abide by any particular term of the prior plea agreements.  He has not shown any promise by the

19  prosecutor that the convictions would not be used later to enhance a future sentence under a law

20  that did not yet exist and he has not shown that there was a promise that the law would not

21  change.  In fact, petitioner concedes that this subject was not addressed in the earlier proceeding.

22  Any contention that the trial court that imposed petitioner's current sentence breached his prior

23  plea agreements does not compel a different conclusion.  The sentencing court was not a party to

24  petitioner's earlier agreements and was not bound or restricted by them.

25        This court concludes that petitioner's equal protection claim should also be denied

26  pursuant to 28 U.S.C. § 2254(b)(2).  As noted above, petitioner's claim of sentencing error is not

cognizable in this federal habeas corpus proceeding. Habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by either a state trial court or appellate court. Cacoperdo, 37 F.3d at 507; Hendricks, 993 F.2d at 674.

In his state court petition, petitioner also alleged that it is unconstitutional to use a prior conviction to enhance a sentence. However, the Supreme Court has long upheld the use of prior convictions to enhance sentences for subsequent convictions. See Schiro v. Farley, 510 U.S. 222, 223 (1994) (citing Spencer v. State of Texas, 385 U.S. 554, 559 (1967)).

Petitioner has failed to show that the state courts committed an error resulting in a complete miscarriage of justice. See Parke v. Raley, 506 U.S. 20, 27 (1992) ("we have repeatedly upheld recidivism statutes against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities"); United States v. Kaluna, 192 F.3d 1188, 1199 (9th Cir. 1999) ("The Supreme Court and this court uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are "on the books at the time the [present] offense was committed.") (quoting United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir. 1989) (per curiam); Witte v. United States, 515 U.S. 389, 399 (1995) (recidivist statutes do not violate double jeopardy because the enhanced punishment imposed for the later offense is not viewed as either a new jeopardy or an additional penalty for the earlier crimes, but is instead a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repeat offense).

In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court made clear that, in the context of an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Andrade, 538 U.S. at 72 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983);

1   and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The Andrade Court concluded that two

2   consecutive 25-years-to- life sentences with the possibility of parole, imposed under California's

3   three-strikes law following two petty theft convictions with priors, did not amount to cruel and

4   unusual punishment.  Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

5   sentence of 25 years to life imposed for felony grand theft under California's three-strikes law did

6   not violate the Eighth Amendment).  "Outside the context of capital punishment, successful

7   challenges to the proportionality of particular sentences have been exceedingly rare."  Rummel,

8   445 U.S. at 272.

9         The United States Supreme Court has cautioned federal courts to be "'reluctan[t]

10   to review legislatively mandated terms of imprisonment.'"  Hutto v. Davis, 454 U.S. 370, 374

11   (1982) (quoting Rummel, 445 U.S. at 274).  "Generally, as long as the sentence imposed upon

12   the defendant does not exceed statutory limits, [a federal court] will not overturn it on eighth

13   amendment grounds."  United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir. 1988).  See

14   also Belgarde, 123 F.3d at 1215; United States v. McDougherty, 920 F.2d 569, 576 (9th Cir.

15   1990).  "[A] sentence within the limits set by a valid statute may not be overturned on appeal as

16   cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity

17   of the crime' as to shock our sense of justice."  United States v. Cupa-Guillen, 34 F.3d 860, 864

18   (9th Cir. 1994) (quoting United States v. Vega-Mejia, 611 F.2d 751, 753 (9th Cir. 1979)) (citing

19   United States v. Washington, 578 F.2d 256, 258-59 (9th Cir. 1978)).

20         In Andrade, the Supreme Court upheld imposition of two consecutive twenty-five

21   years to life sentences under California's three strikes law after Andrade was convicted of petty

22   theft of $150.00 worth of videotapes, with several prior convictions for petty theft, burglary and

23   drug offenses.  538 U.S. at 66-67.  In Ewing, the Court upheld a sentence of twenty-five years to

24   life imposed under the same law following a conviction for grand theft involving three golf clubs

25   valued at $399.00 each with four prior felony convictions for burglary and robbery.  538 U.S. 16-

26   17.  See also Rummel, supra (upholding life sentence with the possibility of parole for recidivism

based on three underlying felonies of fraudulent use of a credit card for $80.00, passing a forged check for $28.36, and obtaining $120.75 under false pretenses); Harmelin, supra (upholding sentence of life without the possibility of parole for a first offense of possession of more than 650 grams of cocaine); see also United States v. Carr, 56 F.3d 38, 39 (9th Cir.1995) (sentence of 22 years upon conviction for sale of 66.92 grams of cocaine base with enhancement for two previous convictions for minor drug sales did not raise inference of gross disproportionality).

Under the decisions announced in Andrade and Ewing, petitioner's case is not one of those "exceedingly rare" sentences fitting within the contours of the "gross disproportionality" principle, and thus does not constitute cruel and unusual punishment. In the instant action, petitioner was convicted of three felony counts: sale of marijuana, sale of cocaine base, and possession for sale. Petitioner was also found to have two prior felony convictions, and to have committed at least one of the prior offenses while on probation. Petitioner's record renders his sentence indistinguishable from those upheld in Andrade and Ewing. Petitioner's Eighth Amendment claim must therefore be denied.

Finally, petitioner claims that the trial court abused its discretion when it declined, at the time of sentencing, to strike his prior conviction in the furtherance of justice.[4] (State Court Petition at 22-30.) Petitioner argues that his past offenses did not involve any violence and were not serious and did not show a threat of violence. (Id. at 25.) Petitioner further argues that his present crimes were not violent or serious. (Id.) Petitioner did not use a weapon or inflict an injury in any of his crimes. (Id.) Petitioner argues that his "background, character and prospects" do not compel the conclusion that he falls within the "spirit of the Three Strikes Law." (Id. at 26.) Petitioner further argues these were victimless crimes and that he "did not

---

[4] California Penal Code § 1385 provides, in relevant part, "[t]he judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." The California Supreme Court has held that in cases charged under California's Three Strikes law, a court may exercise the power to dismiss prior convictions at the time of sentencing in the furtherance of justice. People v. Superior Court (Romero), 13 Cal.4th 497, 529-30 (1996).

actively solicit their business but they were willing partners in the drug sales transactions." (Id. at 27.)  Petitioner argues that the "circumstances in mitigation outweigh those in aggravation, making the low term appropriate for the primary offense." (Id. at 30.)  Finally, petitioner contends that the enhancements for his prior convictions were an overkill on the part of the trial court, especially where petitioner exercised caution to prevent harm to persons or damage to property, including the fact that petitioner was never armed in the commission of these crimes as is often the case in such street level transactions." (Id. at 30.)

This claim essentially involves an interpretation of state sentencing law.  As explained above, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle, 502 U.S. at 67.  So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." Makal, 544 F.2d at 1035.  Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

The trial court's decision not to strike petitioner's prior convictions was not fundamentally unfair.  The state court record reflects that prior to the sentencing proceedings petitioner's trial counsel filed a motion to strike petitioner's prior convictions in the interest of justice. (CT 206-14.)  At the hearing on the motion, defense counsel argued for leniency. (RT 294-97.)  The trial judge stated that "Everybody has characterized [petitioner's] conduct as being street-level drug dealer." (RT 297.)  The judge acknowledged that no violence was involved and that petitioner was "a nice fellow." (Id.)  However, the judge noted petitioner was not eligible for probation and had "been on probation in a couple cases." (RT 299.)  The judge declined to strike either of the prior convictions, stating "I have got to consider the protection of the community." (RT 300.)  These conclusions are not contrary to the facts in the trial record.

/////

1    After a careful review of the sentencing proceedings, this court finds no federal

2  constitutional violation in the state trial judge's exercise of his sentencing discretion.

3  Accordingly, petitioner is not entitled to relief on this claim.[5]

4    In light of the above, petitioner's claims three and five should be denied.

5    C.  Sufficiency of Evidence

6    In petitioner's sixth claim, he contends that his conviction was based on the

7  uncorroborated testimony of police officers and that there was insufficient evidence of his guilt.

8    No state court issued a reasoned opinion addressing this claim.

9           A petitioner for a federal writ of habeas corpus faces a heavy
           burden when challenging the sufficiency of the evidence used to
10         obtain a state conviction on federal due process grounds.  In
           Jackson v. Virginia, the Supreme Court held that "the relevant
11         question is whether, after viewing the evidence in the light most
           favorable to the prosecution, any rational trier of fact could have
12         found the essential elements of the crime beyond a reasonable
           doubt."  443 U.S. [307] at 319, 99 S.Ct. 2781 [(1979)].
13

14  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  Habeas corpus relief is available only if

15  the state court's rejection of petitioner's sufficiency of the evidence claim was "objectively

16  unreasonable."  Id. at 1274-75 & n.13.

17    This court has reviewed the record and finds that the state court fairly described

18  the facts adduced at trial.  Unfortunately for petitioner, he was under surveillance by the police

19  during most of the events at issue here; petitioner's grandmother lived only about 75 yards from

20  the police substation.  (RT 42.)  Both Officer Wheat and Officer Ramsay, who personally viewed

21  petitioner's actions, testified at trial.  (RT 40-80 & 81-118; 140-69.)  Officer Bottomley provided

22  his expert opinion in support of the prosecution.  (RT 179-89.)  Although Derrick Shields had

23

24         [5] If petitioner's sentence had been imposed under an invalid statute and/or was in excess
     of that actually permitted under state law, a federal due process violation would be presented.
25   See Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where
     petitioner's sentence of life imprisonment without the possibility of parole could not be
26   constitutionally imposed under the state statute upon which his conviction was based).  However,
     petitioner has not made that showing here.

1  trouble remembering certain facts during his testimony at trial (RT 22-24, 26-28, 33), he

2  confirmed that his car made no stops between the time it had stopped at 201 Mark Street and the

3  time police officers stopped the vehicle in which he was a passenger.  (RT 31.)  Officer Wheat

4  testified that at the station, where he had taken Shields for further interview (RT 58), Shields told

5  the officers that his girlfriend handed money to petitioner, and gave a description of the person

6  who sold them marijuana, referred to him as "Thomas," and later identified a photograph of

7  petitioner as that person.  (RT 58-61.)

8          With regard to the sale of cocaine, Officer Wheat testified that he viewed the

9  driver of a white Mustang stop his car and speak with petitioner.  (RT 83.)  Officer Wheat

10  testified that the driver then pulled up, parked and got out of his car, carrying something in his

11  hand which Officer Wheat stated he was 70% sure it was folded up money because it was green.

12  (RT 85-87.)  Officer Wheat testified that petitioner took it from the driver, then took something

13  light-colored out of his mouth and handed it to the driver of the white Mustang.  (RT 89-90.)

14  Officer Darden testified he had also been surveilling petitioner through binoculars.  (RT 137.)

15  He testified that he stopped the white Mustang in which Mr. Brown was later discovered to have

16  a rock of cocaine between the seats.  (RT 138.)  Officer Darden testified that he stopped the

17  /////

18  white Mustang about three blocks from where he last saw the car and that only about a minute

19  elapsed from the time he observed the substation until he made the stop.  (RT 138.)

20          After viewing the evidence in the light most favorable to the prosecution, this

21  court finds that any rational trier of fact could have found the essential elements of the crimes

22  beyond a reasonable doubt.  Petitioner's sixth claim for relief should be denied.

23          D.  Fourth Amendment Claims

24          In claims 7, 8, 9, 10, 11, 12 and 13, plaintiff raises allegations that various trial

25  court rulings violated his Fourth Amendment right to be free from unreasonable searches and

26  seizures.  (Id.)  These claims are not cognizable in a federal habeas corpus proceeding.

1    The United States Supreme Court has held that "where the State has provided an

2    opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

3    granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

4    search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976).  Thus,

5    a Fourth Amendment claim can only be litigated on federal habeas where petitioner demonstrates

6    that the state did not provide an opportunity for full and fair litigation of the claim; it is

7    immaterial whether the petitioner actually litigated the Fourth Amendment claim.  Ortiz-

8    Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); Gordan v. Duran, 895 F.2d 610, 613 (9th

9    Cir. 1990).

10    The only issue before this court is whether petitioner had a full and fair

11    opportunity in the state courts to litigate his Fourth Amendment claim, not whether the state

12    courts correctly disposed of the Fourth Amendment issues tendered to them or even whether the

13    claim was correctly understood.  See Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994).

14    Here, petitioner concedes the trial court held a hearing on petitioner's motion to suppress

15    pursuant to California Penal Code § 1538.5.  (Traverse at 5.)  However, petitioner attempts to

16    argue that because the state court failed to correctly apply the Fourth Amendment demonstrates

17    he was not provided a full and fair hearing.  (Traverse at 5.)  Petitioner may not circumvent

18    binding authority in this way.  The record reflects petitioner had a full and fair opportunity to

19    litigate his Fourth Amendment claims in state court.  Accordingly, claims 7, 8, 9, 10, 11, 12, and

20    13 are barred.

21    E.  Use of Hearsay Testimony

22    In claim 14, petitioner argues that one of the witnesses at trial was allowed to state

23    what a third party told him, improperly allowing hearsay testimony, and depriving petitioner of

24    his right to confront witnesses against him.  In his traverse, petitioner asks the court to take

25    judicial notice of Crawford v. Washington, 541 U.S. 36 (2004)(hearsay evidence can only be

26    /////

1  admitted at trial if the witness is unavailable and the defendant has had an opportunity to cross-

2  examine the witness prior to trial).

3        As a general rule, evidentiary rulings by state courts do not raise federal

4  constitutional issues.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal habeas corpus

5  relief is only available for evidentiary rulings so egregious that they amount to a violation of the

6  Fourteenth Amendment's Due Process Clause.  See Pulley v. Harris, 465 U.S. 37, 41 (1984).  In

7  order to violate the Due Process Clause the error must render the trial fundamentally unfair.

8  Estelle, 502 U.S. at 72-73.

9        However, recently the United States Supreme Court addressed the question of

10  whether Crawford may be applied retroactively.  Whorton v. Bockting, ____ U.S. ____, 127

11  S.Ct. 1173 (2007).  The Whorton Court held that Crawford v. Washington does not apply

12  retroactively to convictions final on direct appeal as of the date Crawford was decided, or March

13  8, 2004.  Id.  In the instant case, petitioner's direct appeal became final on August 21, 2002.

14  (Resp.'s Ex. G.)  Accordingly, this court cannot apply Crawford to the instant petition.

15        But even assuming the court could review the record under Crawford, petitioner's

16  claim is without merit.  The statement that Officer Wheat made was:

17        Mr. Brown made a statement to me he was coming into the Crest to buy
        some cocaine, that he lived in Martinez, he went up Park Street
18        specifically due to the fact that he had bought cocaine from [petitioner] in
        the past, that is where he was going to buy it.
19

20  (RT 113.)  The prosecution asked one more question, which was answered.  (RT 113-14.)  Then

21  defense counsel stated "In addition, your Honor, I would object to that last statement that the

22  officer read as hearsay and ask it be stricken."  (RT 114.)  The court responded, "It was

23  nonresponsive, so the last statement will be stricken."  (RT 114.)

24        The record reflects that the trial judge struck Officer Wheat's statement, so the

25  hearsay statement of Mr. Brown was not part of the record for the jury's consideration.   (RT

26  114.)  The jury was later admonished that it was not to consider for any purpose any offer of

evidence that was stricken by the court.  (RT 196.)  Reviewing courts presume "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."  Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985); see also Richardson v. Marsh, 481 U.S. 200, 206 (1987)(referring to "the almost invariable assumption of the law that jurors follow their instructions"); Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir.1997) (holding that juries are presumed to follow a court's instructions as they are written).

Moreover, even if the admission of this statement was error, petitioner has failed to demonstrate prejudice.  Petitioner is required to demonstrate that the error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619 (1993).  Officer Wheat personally observed petitioner's actions and testified that he believed petitioner was selling the driver of the white Mustang rock cocaine.  (RT 83-90.) Officer Darden testified that he stopped the white Mustang only three blocks away within about a minute and the driver pointed to the rock cocaine between the seats when prompted by the officer.  (RT 98.)  Given this testimony as well as the evidence described in section (C) above, this court cannot find that any error in admitting the hearsay statement had a substantial and injurious effect on the jury's verdict.  Petitioner's fourteenth claim should be denied.

F.  Ineffective Assistance of Trial Counsel

In the petition, petitioner contends that trial counsel was ineffective because:

> The trial counsel failed to aggressively investigate the circumstances and failed to put forth a defense of the charges.  In effect, the counsel failed the petitioner.  By accepting persons as witnesses when such witnesses had no percipient knowledge of the facts. . .

(Pet. at 17.)[6]

---

[6]  In his state court petition, petitioner argued that defense counsel failed to raise various Fourth Amendment challenges; failed to pursue a misidentification defense based on petitioner's view that Jabbar Brown looks similar to petitioner and was present at the time the white Mustang driver (a different Mr. Brown) was found in possession of rock cocaine; failed to pursue

1    Respondent argues that the summary statement contained in the petition is

2 insufficient to make a prima facie case, but that review of the record reflects defense counsel

3 thoroughly cross-examined the prosecution witnesses and presented his own defense witness to

4 explain why petitioner was in possession of such a large amount of cash in small denominations.

5 (Answer at 15.)  Respondent also contends that petitioner has failed to demonstrate prejudice.

6    The state court found that petitioner failed to make a prima facie showing that

7 defense counsel's performance was constitutionally deficient and that such deficiency led to an

8 unfair trial or unreliable result, citing Strickland, 466 U.S. at 694.  (Resp.'s Ex. I, at 3.)

9    The Sixth Amendment guarantees the effective assistance of counsel.  The United

10 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

11 Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

12 counsel, a petitioner must first show that, considering all the circumstances, counsel's

13 performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

14 identifies the acts or omissions that are alleged not to have been the result of reasonable

15 professional judgment, the court must determine whether, in light of all the circumstances, the

16 identified acts or omissions were outside the wide range of professionally, competent assistance.

17 Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of

18 counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide

19 range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

20 Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised

21 acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

22 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

23

24 petitioner's position that he was not in the area at the time the rock cocaine sale was made and
   failed to pursue an alibi defense by obtaining a statement from petitioner's wife to that effect;
25 failure to pursue a defense that African-Americans were being unfairly targeted based on race;
   failure to obtain evidence to discredit Officer Ramsay regarding the evidence retrieved from the
26 crawl space; and failed to appropriately challenge Officer Ramsay or Officer Horton on cross-
   examination.  (Id. at 75-115.)

1    Second, a petitioner must establish that he was prejudiced by counsel's deficient

2  performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable

3  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

4  been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine

5  confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

6  F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's

7  performance was deficient before examining the prejudice suffered by the defendant as a result of

8  the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of

9  lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949,

10  955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

11    Petitioner has failed to demonstrate that the result of the proceedings would have

12  been different had defense counsel taken those steps suggested in the state court petition.

13  Petitioner did not present a declaration from his wife or declarations or photographs that

14  demonstrate a resemblance existed between petitioner and Jabbar Brown such that petitioner had

15  been mistaken for Jabbar Brown. But even if he had, petitioner would still have to demonstrate

16  that evidence would have overcome the testimony from police officers who personally viewed

17  petitioner's actions. Their testimony was corroborated, at least in part, by statements made by

18  Shields during his police interview. And, petitioner concedes that "petitioner was arrested the

19  next day because a Mr. Brown told police officers that he bought drugs from petitioner." (State

20  Court Petition at 113.) Although Mr. Brown, the driver of the white Mustang, did not testify at

21  trial, there were sufficient facts from which the jury could find petitioner had sold rock cocaine to

22  Mr. Brown.[7] (RT 137-38.) In light of the evidence presented at trial, this court cannot find that

23  there is a reasonable probability that, but for counsel's errors, the result of the proceeding would

24  have been different. After a review of the record, this court concludes that the state court

25

26    [7] On direct appeal, the state court found that the "evidence of [petitioner's] guilt on [the sale of the rock cocaine] count was overwhelming." (People v. Walker, slip op. at 7.)

1   determination with regard to petitioner's claim of ineffective assistance of trial counsel was not

2   contrary to, or an unreasonable application of Strickland.  Claim 15 should also be denied.

3                  G.  Ineffective Assistance of Appellate Counsel

4                  Finally, petitioner claims appellate counsel was ineffective because counsel

5   "failed to raise the issues that needed to be raised."  (Pet. at 18.)  Respondent contends this is

6   insufficient to state a claim of ineffective assistance of counsel.

7                  The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

8   v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

9   However, an indigent defendant "does not have a constitutional right to compel appointed

10   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

11   professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

12   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

13   ability of counsel to present the client's case in accord with counsel's professional evaluation

14   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

15   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

16   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

17   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

18   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

19   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

20   context, petitioner must demonstrate that, but for counsel's errors, he probably would have

21   prevailed on appeal.  Miller, 882 F.2d at 1434, n.9.

22                  Petitioner's appellate counsel apparently reviewed the trial transcripts and raised

23   the two issues he believed had the most merit.  This decision was "within the range of

24   competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759,

25   771 (1970).  Although petitioner faults counsel for not raising all the claims contained in this

26   petition, this court has evaluated those claims and determined they lack merit.  Accordingly,

1   petitioner is unable to demonstrate prejudice, and is not entitled to relief on this claim.  Claim 16

2   should also be denied.

3              For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's

4   application for a writ of habeas corpus be denied.

5              These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED:  May 23, 2007.

14

15                        UNITED STATES MAGISTRATE JUDGE

16

17  /001; walk0555.157

18

19

20

21

22

23

24

25

26